### SHAFFER et al. v. BROWN.
### No. 2377.

Court of Civil Appeals of Texas. Beaumont.
April 12, 1933.

Rehearing Denied May 10, 1933.

Dean & Humphrey, of Huntsville, and Foster, Williams & Nicholson and Pitts & Liles, all of Conroe, for appellants.

Crawford & Crawford, of Conroe, and Vinson, Elkins, Sweeton & Weems, of Houston, for appellee.

O'QUINN, Justice.

Appellant S. O. Shaffer sued appellee, J. B. Brown, in trespass to try title to 44 acres of land in Montgomery county, Tex. Brown answered and impleaded Mrs. M. D. Shaffer, wife of S. O. Shaffer, and J. H. Hudspeth and A. L. Ross, as defendants, each of whom filed answer.

Appellee, Brown, filed his second amended answer and replication, consisting of a general demurrer, general denial, plea of not guilty, and specially that on December 11, 1926, he sold and conveyed the land in controversy to A. L. Ross, one of the defendants, for a cash consideration of $100, and five vendor lien notes, each for the sum of $180 payable to him (Brown). He further answered, in substance: (1) That said Ross was unable to pay for the land, and "in the year 1928" executed a deed reconveying the land to him, which deed was left with defendant J. H. Hudspeth to be delivered to Brown when called for, that Hudspeth refused to deliver said deed to him (Brown), that he (Brown) borrowed $255 from the Farmers' & Merchants' State Bank of Conroe while he had possession of said notes, and that as security for the loan he transferred said Ross notes to said bank; (2) that a deed was executed, signed, acknowledged, and delivered by A. L. Ross to J. B. Brown for the land in question, of date the —— day of ——, 1929, conveying said property to J. B. Brown for the cancellation, surrender, and delivery of the said five vendor lien notes, and that said deed had been lost or mislaid or purposely withheld from him by the said Hudspeth, and gave notice to produce the deed on the trial of the case; (3) that after the execution of the reconveyance deed to him by Ross, he (Brown) entered upon the premises on or about February 28, 1930, and was living thereon as his home at the time of the filing of the suit, and that the dealings between

him and defendant Hudspeth were a matter of common knowledge to all the parties to the suit; (4) that he (Brown) was the owner of the land in controversy, subject to the debt of $255 which he owed to whoever held the note he had executed to the F. & M. Bank, and offered to pay the amount of said note into court, provided the land was adjudged to him; (5) that appellant S. O. Shaffer, with full knowledge that he (Brown) had conveyed the land in controversy to A. L. Ross for a consideration of $1,010, "as shown by deed of record in Book 116, page 635, Deed Records of Montgomery County, Texas, and retaining five (5) vendor's lien notes against said land, defendant, S. O. Shaffer, acting in collusion with the other defendants in this cross action, induced A. L. Ross to convey said land in controversy to himself and M. D. Shaffer for a consideration of One Thousand, Twenty ($1,020.00) Dollars, which this defendant here charges is not the true consideration for said land but fraudulently inserted in said deed in order to defraud this defendant out of his home and take from him the land described herein"; (6) sections 9 and 10 of the answer related to fraud, which sections will hereafter be set out in full; (7) that if he (Brown) should be denied a recovery of the land, he should have judgment against A. L. Ross for the amount of the five vendor lien notes, less the amount owed by him on the $255 bank note, and for foreclosure of the vendor's lien against all parties defendant; (8) suit by cross-action against S. O. Shaffer, his wife, M. D. Shaffer, J. H. Hudspeth, and A. L. Ross, for title and possession of the land; (9) pleas of title in Brown under the several statutes of limitation; and (10) plea of valuable improvements in good faith.

All cross-defendants filed replications in due course to the amended answer and cross-action of Brown. The cross-defendants specially answered:

"Further answering herein, these plaintiffs specially deny that J. H. Hudspeth sought to reconvey a Whippet car to which he had no title. Plaintiffs further say that on or about the ——— day of ———, A. D. 19—, the said J. B. Brown, finding himself unable to pay off and discharge the note which he had made to the said Farmers & Merchants State Bank, to which he had attached the vendor's lien notes executed by A. L. Ross as security, entered into a contract with J. H. Hudspeth whereby, under the terms of which the said Brown promised and agreed to convey and did convey to the said J. H. Hudspeth the said vendor's lien notes formerly executed by A. L. Ross, in consideration of which the said J. H. Hudspeth paid off and discharged said indebtedness of the said Brown to the said Farmers & Merchants State Bank, and conveyed and delivered to the said Brown one Whippet automobile and

thereby the said J. H. Hudspeth became the owner of said notes, and thereafterwards, for a valuable consideration, conveyed the same to these plaintiffs, who became the legal owners thereof, without any notice that J. B. Brown was asserting any interest or title hostile to their own."

The cross-defendant Hudspeth specially answered:

"And for further answer herein this defendant says that he acquired said vendor's lien notes from the Farmers & Merchants State Bank for consideration of $300.00 prior to the acquisition of said notes, J. B. Brown came to this defendant and told him that he, the said Brown, was financially unable to pay off said note upon which the vendor's lien notes were given as collateral. That if the said Hudspeth would pay off the said note in the sum of $300.00 and give to the said Brown a bill of sale to a Whippet automobile the said Brown would make a transfer of all of the said vendor's lien notes. That this defendant, in line of such agreement, paid off the $300.00 note at the said Farmers & Merchants State Bank and gave the said J. B. Brown a bill of sale to the said Whippet automobile. This defendant says that the said Brown made the proposition above outlined of his own free will and that there was no inducement whatever to get the said Brown to part with the title in and to the vendor's lien notes. That said Brown took said automobile, after the said bill of sale had been given to said Brown, drove it off and kept it, and that the title to the said automobile is still in J. B. Brown. That because of said transfer of the said automobile and the extinguishment of said $300.00 note at the Farmers & Merchants State Bank J. B. Brown parted with all title, right and interest in and to said vendor's lien notes and that title vested in this defendant."

To this special plea the defendant Brown answered by general denial.

Defendants S. O. Shaffer and wife presented numerous exceptions to Brown's amended answer, denied all the matters of fact alleged therein, and further pleaded matters in avoidance thereof. The court overruled all of the exceptions.

The case was tried to a jury upon special issues, in answer to which the jury found that A. L. Ross reconveyed the land to Brown; that the deed of reconveyance from Ross to Brown was delivered to J. H. Hudspeth for safe-keeping for Brown and subject to his order when called for, and to be delivered to Brown when called for; that Hudspeth fraudulently induced Ross and his wife to make a deed to the land in controversy to S. O. Shaffer and M. D. Shaffer about March 12, 1930; that at the time Ross and wife conveyed the property involved to S. O. Shaffer and M. D. Shaffer said Hudspeth was acting for S. O. Shaffer and

M. D. Shaffer in procuring said conveyance; that there was no agreement between Brown and Hudspeth by the terms of which Brown traded to Hudspeth all his right and interest in and to the vendor's lien notes executed by Ross and payable to Brown.

Upon the answers of the jury to the special issues, judgment was rendered for appellee, Brown, for the land. Motion for a new trial was overruled, and the case is before us on appeal.

Appellants' first and second propositions challenge the sufficiency of appellee's pleading wherein he charges fraud and fraudulent conduct on the part of appellants and the defendant J. H. Hudspeth in procuring the deed from A. L. Ross and wife to appellants to the land in question. These propositions urge that fraud is alleged in general terms, to which appellants excepted because the acts or specific facts constituting the alleged fraud were not pleaded, and because it was not alleged that appellees relied thereon and that the court erred in overruling their said exceptions.

■ The paragraphs in appellee Brown's answer alleging fraud are:

"8. That after this defendant had acquired title to the land in controversy, as set out herein, and moved upon same and made valuable improvements thereon and was using said land as a home, the plaintiff, S. O. Shaffer, with full knowledge of this defendant having conveyed to A. L. Ross for a consideration of One Thousand Ten ($1,010.00) Dollars, as shown by deed of record in Book 116, page 635, Deed Records of Montgomery County, Texas, and retaining five (5) vendor's lien notes against said land, the defendant, S. O. Shaffer, acting in collusion with the other defendants in this cross action, induced A. L. Ross to convey said land in controversy to himself and M. D. Shaffer for a consideration of One Thousand Twenty ($1,020.00) Dollars, which this defendant here charges is not the true consideration for said land, but fraudulently inserted in said deed in order to defraud this defendant out of his home and take from him the land described herein.

"9. The said J. B. Brown, in this connection, says: That the act of J. H. Hudspeth in taking charge of and retaining the deed executed by A. L. Ross to him and failing to deliver the same to him when demanded by J. B. Brown was a fraud practiced by J. H. Hudspeth, acting in connection with the other defendants herein. That the defendant J. B. Brown relied upon J. H. Hudspeth treating him right and expected him to deliver his deed to him when he offered to pay him the Two Hundred and Fifty Five ($255.00) Dollar note due by J. B. Brown to the F. & M. Bank but the said J. H. Hudspeth refused to deliver the deed but fraudulently undertook to convey an old Whippet car which he had no bill of sale for and offered to pay the said J. B. Brown a monied consideration for the land in question, which he thereafter refused to do, and which he at all times refused to do, all of which was fraudulently done to get a deed made to S. O. Shaffer and M. D. Shaffer in an effort to make them innocent purchasers of said land and thereby defraud the said J. B. Brown out of his home. That the fraud practiced on the defendant, J. B. Brown, was known to the other defendants in this cross action and that in collusion with the said J. H. Hudspeth acted with him and perpetrated said fraud. That in this connection the said J. B. Brown says that he has been greatly damaged by the fraud practiced upon him, as set forth in his pleading herein, in that a suit has been filed by the plaintiff, S. O. Shaffer, for his home and a determined effort made by him in this cause to take away from him his home, to which he is legally and justly entitled upon the payment of Two Hundred and Fifty Five ($255.00) Dollars and the interest thereon.

"10. The defendant, J. B. Brown, further shows unto the court that if it be shown upon the trial of this cause that S. O. Shaffer and his wife, M. D. Shaffer, were innocent purchasers of the property sued for, which is not admitted but expressly denied, then this defendant, J. B. Brown, says that he has been wronged and defrauded out of his land in controversy by the fraudulent and illegal acts of J. H. Hudspeth in getting him to permit said Hudspeth to hold said deed which he either purposely destroyed or mislaid, and that the said Hudspeth, the defendant in this cross action, on account of said fraudulent acts as complained of herein, upon which this defendant relied, has caused him to be damaged in the sum of Nine Hundred ($900.00) Dollars, the amount of the A. L. Ross note, with interest, less what he is due on the Two Hundred Fifty Five ($255.00) Dollar note which he owed to the F. & M. Bank and for which sum of money he asks judgment against the said J. H. Hudspeth."

■ Appellants excepted to the allegations of paragraph 8 because same failed to allege any act on the part of Hudspeth that would constitute fraud, or that resulted in fraud being perpetrated; that paragraph 9 did not allege any representations or statements of fact made by Hudspeth or appellants which would constitute fraud, nor in any manner plead any acts upon the part of Hudspeth or appellants amounting to fraud, nor that appellants conspired in the perpetration of the fraud attempted to be alleged, nor did same allege that appellee relied upon such statements or representations. These exceptions were overruled. We think the exceptions should have been sustained. It is well settled that it is not sufficient to allege fraud

in general terms. The pleadings should contain specific allegations of the acts, representations, and conduct relied on, and must be definite and certain; the facts constituting fraud must be alleged. 20 Tex. Jur. § 90, pp. 134, 135, and authorities there cited. In addition to stating the specific facts, acts, statements, or representations constituting fraud, the pleader must allege that the defrauded party relied upon such statement or representations and was thereby deceived and induced to act to his injury. 20 Tex. Jur. § 93, pp. 140, 141, and authorities there cited.

In addition to what we believe to be the insufficiency of the pleadigs set out above to charge fraud, we think it very probable that the jury's answers to special issues Nos. 1 and 2 wherein they found that Ross and wife had reconveyed the land to Brown, and the deed of reconveyance was left with Hudspeth for safe-keeping and was to be delivered to Brown when he called for same, were induced by the frequent use of the words "fraud" and "fraudulent" by appellee in his answer in relation to the matters in controversy. Fraud was the basis of the theory upon which defendant Brown predicated his defense and ground for recovery in his cross-action, and, there being no sufficient allegation of the acts and representations constituting the fraud attempted to be charged, it is not certain that the jury's findings were not thereby induced.

■ Appellants' sixth, seventh, eighth, ninth, and tenth assignments of error complain of the admission of certain testimony over appellants' objection as reversible error. The sixth and seventh assignments are that it was error for the court to permit appellee to testify that at the time of the trial the land in controversy was worth $10,000, and that it could be leased for oil purposes for $200 an acre. This was objected to on the grounds that said testimony was irrelevant and immaterial, and that, if the value of the land was admissible at all it would have to be confined to its value at the time of the alleged fraud. These assignments are sustained. We do not believe that the value of the land, either when sold by Brown to Ross, or by Ross to Shaffer, or at the time of the trial, was relevant or material to elucidate any issue in the case. The case was one of trespass to try title, and the defense was one founded in fraud. The value of the land involved at any time could not throw any light upon the question of title to the land. The evidence could but have had an injurious effect upon appellants' asserted cause of action.

■■ The eighth assignment urges that it was error for the court to permit appellee to testify that defendant Hudspeth had traded to him an automobile that was a sorry car and had no value. This testimony was offered by appellee upon the theory that appellant Shaffer was claiming to be an innocent purchaser, and that he (Brown) was attempting to show that Shaffer had not paid value for the land. We fail to find in any of appellee's pleading any basis for the admission of this testimony, or that any fraudulent representations were made by Hudspeth to appellee as to the value of said car at the time appellee received same from Hudspeth, or that Shaffer was in any way cognizant of or connected with Hudspeth in the sale of the car to appellee, or that said car was any part of the consideration Shaffer paid for the land. Moreover, appellee, Brown, in the course of his testimony, several times admitted that he sold the Ross vendor's lien notes, amounting to $900, to Hudspeth in consideration of his (Hudspeth's) paying off Brown's note to the bank in the sum of $255 with interest, and the delivery to him (Brown) of the car in question at a valuation of $400, and Hudspeth's agreeing to pay him (Brown) the difference of about $245. Hudspeth did pay off the bank note amounting to more than $300, including the interest, and the bank transferred the Ross notes to him, and he (Hudspeth) did deliver the car to Brown, which Brown accepted and kept and used for some fifteen months, and not until he was sued herein did he undertake to repudiate the trade with Hudspeth and to carry the car back to Hudspeth, who refused to receive same. In his testimony, Brown repeatedly admitted that, if Hudspeth had paid him the $245 difference in the valuation of the Ross notes on the one hand, and the Brown bank note and the car on the other, he would not be urging his defense and right to recover in this suit. So we think it appears without dispute that Brown did trade the Ross vendor's lien notes, which represented his claim, and all of his claim, to or against the land, to Hudspeth, and knew that Hudspeth had paid the bank note, and agreed to and did accept the car in question at a valuation of $400, and the promise of Hudspeth to pay him the difference of $245. This being established by Brown's admissions, it would follow, we think, that the only right in Brown to recover would be against Hudspeth for the unpaid balance of $245 for the Ross notes. Hudspeth denied that he agreed to pay the $245, but that was a question of fact to be determined, but was not submitted to the jury. The question of whether Brown sold to Hudspeth all of his right and interest in and to the Ross notes was submitted, and the jury found that he did not. This finding is directly in the face of the admissions of appellee that he did make such an agreement, and is therefore without evidence to support it. For this reason alone the judgment would have to be reversed.

■ The ninth assignment is that the court erred in admitting the testimony of the witness Bailey that in 1925 he bought a second-hand car from Hudspeth which was of no

value. This testimony was not admissible on any theory of the case. The deal, if it took place, was long before any of the events occurring in the instant case, was wholly unrelated to any issue involved, and it is not even intimated that appellants, the Shaffers, had anything to do with or ever heard of the transaction. Its admission in evidence could result only in prejudice to the right of appellants.

The tenth assignment complains that it was error for the court to permit the witness Smith to testify that the car Hudspeth traded to Brown was not in good condition, that "it was pretty bad shot." The assignment is sustained. The evidence was irrelevant and immaterial.

The twelfth assignment is that the court erred in submitting special issue No. 3 to the jury. The issue reads: "Do you find from a preponderance of the evidence that J. H. Hudspeth fraudulently induced A. L. Ross and wife to make a deed to plaintiffs S. O. Shaffer and M. D. Shaffer about March 12, 1930, as alleged in defendant's second amended answer replication and cross action?"

This issue was excepted to by appellants on the grounds: (a) "Because there is no evidence in the record showing, or tending to show, that J. H. Hudspeth, either alone or acting with another fraudulently induced A. L. Ross and wife to make the deed to plaintiffs." (b) "Because if the evidence does, in truth and in fact, tend to show that J. H. Hudspeth fraudulently induced A. L. Ross and wife to execute the deed referred to, there is no proof whatever tending to show that these plaintiffs were in any way parties to such fraudulent conduct, or had any knowledge thereof." (c) "Because the pleading of the defendant Brown specially alleged what the fraudulent conduct of J. H. Hudspeth and others consisted of, and fails to allege in any way that any false or fraudulent representations were made to A. L. Ross and wife and because therefore the pleadings do not support said issue."

We think the exceptions to the issue were well taken. As we understand and interpret appellee's pleading, he nowhere alleges any false or fraudulent statements or representations made by Hudspeth to Ross and wife to induce them to execute the deed to appellants. Moreover, we fail to find in the record any evidence that Hudspeth made false statements to Ross and wife to induce them to convey the land to appellants, but, if mistaken in this, we say that there is absolutely no proof that the Shaffers were in any way parties to such fraudulent representations, or that they had any knowledge of same.

By their fifteenth assignment, appellants complain that the submission of special

issue No. 4 to the jury was error. Special issue No. 4 inquired whether at the time Ross and wife conveyed the land in question to S. O. and M. D. Shaffer, Hudspeth, in procuring them to execute said deed, was acting for said S. O. and M. D. Shaffer. The issue was excepted to because there was no allegation in appellee's pleadings upon which to base same. We sustain this assignment. A careful inspection of the pleadings fails to reveal to us any allegation upon which this issue could be based. In fact, it is specifically alleged by appellee, in the eighth paragraph of his answer, that S. O. Shaffer, not Hudspeth, induced A. L. Ross to convey to him the land in controversy.

Other assignments are urged, but, as the case will be reversed and remanded for another trial, we will not discuss them.

The judgment should be reversed and remanded for another trial, and it is so ordered.

Reversed and remanded.