**ALAMO DEVELOPMENT COMPANY, Appellants,**

v.

**Dean PRIEST et al., Appellees.**

**No. 10739.**

Court of Civil Appeals of Texas.

Austin.

April 6, 1960.

Rehearing Denied May 11, 1960.

Rankin & Martinez, Edinburg, for appellant.

Davee & Davee, Brady, for Dean Priest.

Hal M. Lattimore, Joseph P. Burt, Ft. Worth, for J. C. Priest.

HUGHES, Justice.

Dean Priest, the former wife of J. C. Priest, brought suit against the Alamo Development Company, J. C. Priest, and Earl Wilson to set aside a deed from J. C. Priest to Alamo Development Company, dated prior to the divorce between J. C. and Dean Priest, purporting to convey property alleged to be community, upon the grounds of fraud and lack of mental capacity of the grantor. Since Alamo had conveyed the property to Earl Wilson, he was made a party defendant.

J. C. Priest by affirmative pleading alleged that he did not execute or sign the deed, that it was without consideration and had been procured by fraud.

Upon trial to a jury it was found that J. C. Priest signed the deed but that he did not have sufficient mental capacity to know and understand the nature and effect of his act in executing the deed and that Alamo and its agents were aware of this fact.

The jury also found that Alamo and its agents exercised undue influence upon J. C. Priest, thereby causing him to execute the deed, and that neither Alamo nor C. O. Hagan had paid J. C. Priest a valuable consideration for the property.

Exemplary damage issues were found in favor of J. C. and Dean Priest in the sum of $5,000 each.

Judgment in accordance with these findings was entered.

Alamo only has appealed.

The first point presented is that the trial court erred in overruling special exceptions which appellant directed to various paragraphs of the trial petition of Dean Priest and to the petition as a whole. The basic complaint was that the petition was not sufficiently specific to apprise appellant of the acts relied upon to establish (1) fraud; (2) want of consideration; (3) lack of mental capacity, and (4) lack of authority of J. C. Priest to manage community estate because of alleged abandonment and desertion of his wife, Dean Priest.

We do not understand appellant to brief any of these matters except with respect to the allegation of fraud.

 If we are mistaken in this, then we hold that a pleading, as here, alleging that grantee "gave no consideration, payment or thing of value for the conveyance"; sufficiently pleads lack of consideration and that a pleading, as here, which alleges that a person "did not possess sufficient mental capacity to understand the nature and effect of his act" in executing a deed to land, sufficiently pleads lack of mental capacity.

The issue of abandonment or desertion of Dean Priest by J. C. Priest was not submitted to the jury and it does not appear to have been a basis for the judgment. Such issue is, therefore, immaterial and we will not discuss the sufficiency of the pleadings to support it.

 The pleading as to fraud consisted of allegations that J. C. Priest was mentally incompetent when the deed in suit was executed, that Alamo knew of the mental condition of J. C. Priest, that it paid him no consideration for property alleged to be worth $10,000 and that J. C. Priest "began to sell and dispose of the community property of the plaintiff, and to endeavor to defeat the community property rights of the plaintiff, and to dispose of their community property in fraud of the plaintiff and for his own benefit" and that "The Defendant Alamo Development Company, being aware of the scheme of the Defendant J. C. Priest to defraud the plaintiff of her community one-half of said tract of land, conspired together with J. C. Priest in order to fraudulently enrich the Alamo Development Company and J. C. Priest, and to deprive the plaintiff of her property."

It is our opinion that these allegations sufficiently allege fraud, particularly in view of the failure of appellant to demonstrate any harm resulting to it by the admission of evidence to establish fraud which came as a surprise to it.

Appellant cites Shaffer v. Brown, 59 S. W.2d 854, Beaumont Court of Civil Appeals, as being the strongest authority supporting its first point. We have read this case and are not satisfied that the pleadings there are comparable to the pleadings here to such an extent as to make our holding in conflict with that case. We note also that such case was decided before adoption of our Rules of Civil Procedure, Rule 45, providing, in part: "That an allegation be evidentiary or be of legal conclusion shall not be ground for objection when fair notice to the opponent is given by the allegations as a whole."

It is our opinion that the pleading excepted to gave fair notice to appellant of the basis of the claim of Dean Priest.

In appellant's second point, complaint is made of eleven separate evidentiary rulings made by the trial court. We will dispose of each assignment as briefly as possible.

■ (a) In permitting Earl Wilson to testify to the contents of a letter he received from Dean Priest. The objection of hearsay was made and the best evidence rule was invoked.

The record shows that Earl Wilson, a defendant and the person to whom Alamo had conveyed the property, testified:

"Q. You had just had correspondence with her? [Dean Priest] A. I just answered that letter that's all.

"Q. You still can't remember what she said in her letter? A. Well, I'd say that's about right, I don't know."

"Q. Do you have any idea—she must have asked you some questions? A. Well, she—she seemed to be a claiming the land, and of course, I was claiming it, too."

The evidence shows that the letter had been destroyed.

Wilson pleaded that when he accepted the deed from Alamo to this property he "had no knowledge or notice of any im-pediment in the title to said property and accepted the same in good faith, and for value received."

The letter written by Mrs. Priest to Earl Wilson was prior to the date of the deed from Alamo to Wilson. The letter, or the claim asserted in the letter, was admissible on the issue made by Wilson in his answer. The best evidence rule was not applicable under the circumstances.

■ (b) In permitting Earl Wilson to testify to conversations with C. O. Hagan, the objection being that they were hearsay.

The evidence to support this assignment is set out at great length. Most of it relates to transactions between the witness and Hagan which are wholly unrelated to this suit. As to the land involved here it appears only that Hagan told the witness that he "had this 100 acres of land."

Mr. Hagan was a realtor and had been active in the transaction in which Alamo acquired title to the 100 acres of land here involved. We are not informed of the materiality of the above evidence nor in what manner its admission could have been prejudicial to appellant.

■ (c) In permitting in evidence a divorce petition filed in North Dakota by J. C. Priest against Dean Priest. Hearsay and the best evidence were the objections.

The petition was received only for the purpose of showing that Dean Priest had been sued for divorce.

The best evidence rule was inapplicable because of the collateral nature of the instrument.

Mrs. Priest testified, without objection, that she had received the divorce petition from South Dakota. The petition itself was merely corroborative of this.

■ (d) In permitting Dean Priest to testify to letters and their contents from J. C. Priest. The objection was hearsay.

These letters were offered as bearing on the mental condition of J. C. Priest. In our opinion they were not objectionable on the ground of hearsay. Sec. 801, Texas Law of Evidence, McCormick and Ray 2d Ed.

■ (e) This assignment is similar to (d) except that objection was made to introduction of the envelope and its postmark. The grounds of the objection were enlarged to include the assertion that there was no bona fide dispute between Mr. and Mrs. Priest.

Our ruling is the same as under (d). It was a part of Dean Priest's case to establish the mental incapacity of her husband. This was the purpose in introducing the letter. The postmark was merely evidence of the genuineness and timeliness of the letter.

■ (f) In permitting Mrs. Priest to testify to conversations between her and her husband, the objection was hearsay and that the declarations of her husband were self-serving and that J. C. Priest was not available as a witness.

(g) In permitting Mrs. Priest to testify concerning conversations and transactions with her husband to show his mental condition. The objection was hearsay.

(h) In permitting Mrs. Priest to testify to statements and transactions with her husband and son with reference to letters and their contents. Objection, hearsay.

In so far as (f), (g), and (h) relate to acts, conduct, and statements by J. C. Priest evidencing his mental condition, they are overruled upon the authority previously cited.

The only evidence pointed out which refers to a statement by the son of Mr. and Mrs. Priest is her testimony: "Well, he has never been too sympathetic to me; he's been nice, but he's never been against his daddy too much." We find no objection made to this testimony when it was given,

but, even so, we would hold the error, if any, in admitting it to be very harmless. In fact, it seems rather prejudicial to Mrs. Priest. The absence of J. C. Priest is commented upon in (i) below.

(i) In permitting Mrs. Priest to offer in evidence a portion of an unsigned letter from J. C. Priest. Objections, hearsay and that the writer was not present and that only portions were offered.

The letter was proved to be in the handwriting of J. C. Priest. It was, or rather portions of it were, offered to prove the mental condition of the writer. It was admissible for this purpose as we have indicated above. Appellant could have offered the entire letter if it had chosen hence it cannot complain that only portions of it were offered.

■ The absence of the writer of the letter could not possibly have a bearing on its admissibility; as a ground for postponement, maybe, but this question is not presented.

(j) In permitting R. B. Smith, a witness for Mrs. Priest, to testify to conversations between him and J. C. Priest. Objection, hearsay.

(k) In permitting Ramond Wilensky, a witness for Mrs. Priest, to testify to an attempt by J. C. Priest to borrow $5,000 from him.

The conversation Mr. Smith testified about related to irrational statements by Mr. Priest and they were admissible on the issue of mental capacity. The same is true of the testimony of Mr. Wilensky. Other circumstances would be necessary to show that this request was irrational. If it was not irrational, then it would be helpful to appellant.

The second point is overruled.

■ The third point is that error was committed in denying appellant's motion to request Mrs. Priest to produce J. C. Priest

in court after he had appeared earlier for identification.

Mr. Priest had pleaded non est factum and the notary who took his acknowledgment (presumably) was asked to identify Mr. Priest who was then in the courtroom. The jury found against Mr. Priest on this issue.

In our opinion this did not make Mr. Priest a witness. He was more of an exhibit. If the testimony of Mr. Priest was essential to Alamo, the usual processes should have been invoked, or, if the need arose, after the absence of Mr. Priest was detected, postponement or continuance was the remedy.

Under the circumstances and no harm being made to appear, we hold that the discretion of the trial court was properly exercised in denying appellant's motion.

The fourth point is that error was committed in submitting Issue No. 3 to the jury. This issue read:

"If you have answered Issue No. 2 'He did not have sufficient mental capacity', and only in that event, then you will answer Issue No. 3:

*Special Issue No. 3:*

"Do you find from a preponderance of the evidence that the officers or agents of Alamo Development Company dealing with J. C. Priest on or about February 3, 1954, at the time the deed was executed, if it was, knew that J. C. Priest did not have sufficient mental capacity to know and understand the nature and effect of his act in executing the deed, if he did not know?

"Answer yes or no."

The jury answered "Yes".

Alamo objected to submission of this issue on the grounds (1) no evidence; (2) insufficient evidence; (3) all the evidence was to the contrary, and (4) the issue, as framed, was a comment on the weight of the evidence.

Alamo does not question the jury finding that J. C. Priest was without mental capacity when he executed the deed to the 100 acres nor the finding that the deed was without consideration. These findings probably make disposition of this assignment immaterial. We believe, however, that there is evidence from which the jury could reasonably conclude that Alamo knew J. C. Priest did not possess that degree of mentality required to execute a valid deed. This evidence consists mainly of the specific transaction in which Alamo dealt directly with J. C. Priest, the transaction giving rise to this suit.

In appellant's brief it states that it would serve no useful purpose to review page by page the 748 page statement of facts to demonstrate that there was no evidence to sustain this jury finding and it "challenge(s) appellees to point out in their reply brief any evidence" to support the jury finding.

Appellee Dean Priest accepted this challenge and set out facts, not refuted by appellant, which we quote:

"To explain the circumstances of the deed from J. C. Priest to Alamo, it is necessary to go back to early in 1954, some two weeks prior to J. C. Priest's deed. It seems that one Hank Hankins, a man who has acted as agent for Hagan and Alamo on many 'land deals', and evidently one who could keep up with their pace, owned a 300 acre tract of cotton farm land in Reeves County. Hankins 'spotted' J. C. Priest in Pecos, and they negotiated on a trade for several days in that city. Soon the president of Alamo, C. L. Carey, was upon the scene, and the night before Priest's deed was signed, Carey and Hankins, following the instructions of their superior, Mr. Hagan, took Priest in an automobile to Brady, where they woke the owner of an abstract plant sometime between 10 P.M. and midnight and obtained an abstract to Priest's 100 acre tract. After the abstract was obtained the troup

drove immediately to Austin where they spent the remainder of the night in a hotel. The next morning the abstract was taken to an Austin attorney where it was used merely for the land description, and the deed to Alamo was thus prepared. At the same time the deed was drafted the attorney prepared instruments which represented the consideration Priest received for his land.

"He was given a one year 'sharecroppers' lease on the 300 acre tract of farm land in Reeves County, previously owned by Hankins, but then owned by Hagan. This is the usual sharecropper's lease, where the tenant at his own expense, farms the land and pays the landlord $1/3$ of the feed and $1/4$ of cotton grown during the year as rental. Additionally, Priest received a Bill of Sale to some tractors and other farm equipment located on the land, all second-hand and used. Carey himself states that the equipment was worth $21,000.00. Finally, Priest gave Hagan a note for $11,000.00 secured by a lien on the tractors. Thus, on the face of the transaction it seems as though Priest received a $10,000.00 equity in farm equipment for his $8,000.00 farm. Of course, the consideration for the lease was the crop payment which Priest was to make to Hagan. * * * Alamo paid nothing in the sharecropper's lease. The land was owned by Hagan, as was the farm equipment. * * * Hankins sold the 300 acres and the farm equipment to Hagan on January 16, 1954, or two weeks before the land was leased and equipment sold to Priest; and * * * the day before the sale to Hagan, Mr. Hankins mortgaged the farm equipment to Anderson-Clayton Co. for $21,600.00, and Hagan took the equipment subject to the mortgage. Thus * * * Priest * * * traded off his 100 acre tract, which was free and clear of indebtedness, to Alamo in return for a sharecropper's lease and some second-hand farm equipment worth $21,000.00, and already * * * burdened by a prior mortgage for $21,000.00. * * * Hagan received a note from Priest for $11,000.00 payable in six months and *sequred* by a second lien on the farm equipment and still further secured by a lien on all the crops Priest might grow during his tenure on the 300 acre tract. * * *

"Mr. Hankins and Mr. Carey testified under oath that the $21,000.00 mortgage to Anderson-Clayton on the equipment was paid off by Hankins; the former swearing that he would not sell mortgaged property. Yet, their superior, Mr. Hagan, admitted, and the records bear him out, that the farm equipment still was burdened with the mortgage to Anderson-Clayton when it was sold by Hagan to one Jennings in the latter part of 1954, and Anderson-Clayton finally foreclosed their mortgage on the equipment.

"After Priest had signed the deed to his 100 acres, he was given a one-way bus ticket out of town. He stayed on his sharecrop land only a few days before he walked off and left his lease."

Accepting these facts as true we hold that there is evidence of probative value sufficient to sustain the answer of the jury to special issue No. 3, and that such answer is not so against the overwhelming weight of the evidence as to be clearly wrong.

A transaction of this nature under the circumstances shown certainly should have put Alamo on notice that J. C. Priest did not fully understand the nature and effect of his deed.

█ The assignment that this issue, as framed, is a charge or comment on the weight of the evidence is not briefed and is waived.

Finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.