Jimmy Ray PRICE, Appellant,

v.

The STATE of Texas, State.

No. 2–81–040–CR.

Court of Appeals of Texas,
Fort Worth.

Jan. 20, 1982.

Rehearing Denied Feb. 10, 1982.

---

Fred Fick, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Pam Corley, Asst. Dist. Atty., Fort Worth, for appellee.

Before HUGHES, JORDAN and RICHARD L. BROWN, JJ.

## OPINION

JORDAN, Justice.

Appellant was convicted in January of 1979 of aggravated robbery of a Zale's Jewelry Store in Arlington, Texas. His punishment, enhanced by one prior felony conviction to which he pled true, was set by the jury at fifty years in the Texas Department of Corrections. He was first found incompetent to stand trial by a jury in April of 1978. At the competency trial the State's witness, psychiatrist Dr. Sanford Lehrer, testified that in his opinion appellant was "schizophrenic". After approximately four months at Rusk State Hospital appellant was released and found competent to stand trial. At his trial in January, 1979, appellant pleaded not guilty by reason of insanity at the time of the commission of the offense.

The appeal is on two grounds of error. We sustain the first ground of error and reverse the judgment of the trial court.

In his first ground of error appellant complains of the trial court's refusal to admit into evidence five different writings of appellant, all of which were offered to show that he was mentally ill and was suffering from hallucinations and delusions during the time he was in custody following the offense for which he was charged and for some years prior thereto.

It should be emphasized before discussing the exclusion from evidence of these writings, exhibit nos. 1, 2, 3, 4 and 5, that the sole issue before the jury on this trial was whether appellant was sane or not at the time of commission of the offense in January, 1978. He had pled not guilty by reason of insanity. Appellant says that all of these writings, excluded from the jury by the court, contained recitals of delusions and hallucinations of appellant.

Exhibit nos. 1 and 2 were rambling, somewhat disoriented writings of appellant on plain paper which were found at his home by his mother and which were written by appellant in 1969 or 1970, some eight or nine years prior to the offense. Dr. William Frederick Craig, a psychiatrist, testified on behalf of appellant that he had examined him and it was his opinion that in January 1978, at the time of the offense in question, appellant was a paranoid schizophrenic. He also testified that these writings, exhibit nos. 1 and 2, made in 1969 or 1970, which he admitted he had not had an opportunity to examine closely, were consistent with his findings that appellant was a paranoid schizophrenic. The trial court, quite properly we think, held that these writings were too remote in point of time, were not relevant to the issue of whether appellant was sane at the time of commis-

sion of the offense, and neither added to nor detracted from the testimony of Dr. Craig. It was not error for the court to refuse admission of exhibit nos. 1 and 2.

The exclusion of exhibit nos. 3, 4 and 5, is a different matter. These exhibits were all letters written by appellant while he was in custody awaiting trial for the offense of aggravated robbery on January 16, 1978. The letters, produced at trial by appellant's mother, were written during 1978 from his county jail cell to his mother and stepfather. An examination of parts of these letters, exhibit nos. 3, 4 and 5, does, as appellant contends, reveal delusions and hallucinations and were quite possibly indicative of his mental status at the time they were written and as of the time of the offense in January, 1978.

The following excerpts from these letters will demonstrate the nature of the expressions which were offered to show that appellant in fact was suffering from delusions and hallucinations. Exhibit no. 3 read in part as follows: "I can't get any pills form (sic) these people because they hate me. They all wish I was dead but I'm not yet. They stand outside my cell and talk about killing me all the time. They will try something soon. I don't sleep very much so they can't do anything. I wish they would give me something for my head. I stay scared all the time. I want out of here before they kill me. There is a lot of things in my cell but I can't find them. I don't know who all these people are. They come here all the time."

In the letter marked exhibit no. 4, he wrote: "I have had a headache for a long time now but they won't give me anything for it. They all hate me and want to kill me. They tried to poison me but I wouldn't eat so they couldn't. . . . They come by at night and let bad spirits in my room and they keep me awake all night. They took me to see a Doctor yesterday but he wouldn't give anything for my head. . . . I didn't like him, I think he was one of them and wants to kill me. . . ."

Exhibit no. 5 contained these ramblings: "I don't know how much longer I can go on like this, it's sure getting rough. It seems like there are forces trying to tare (sic) me apart. I can't keep my thoughts straight anymore. I'm not sure who's doing this to me, but they've about got me this time, I suppose."

At the trial the State's witness, psychiatrist Dr. Sanford Lehrer, testified that although he originally diagnosed appellant as being schizophrenic, after examining appellant again at time of trial and after reviewing the records at Rusk State Hospital, he thought appellant was malingering. The letters from appellant to his mother and stepfather, excerpts from which are quoted above, were offered to refute this testimony. The State objected to these letters on the grounds that no proper predicate was laid for their admission and that they were self-serving. We think the objection actually was insufficient because we question whether there is any valid objection to the admission of evidence such as "self-serving".

Practically any evidence offered by a party litigant is self-serving, else it would not be offered. This objection does not reveal to the trial judge any valid legal objection or reason to exclude it. It tells him nothing. Likewise the objection of no proper predicate is meaningless as far as informing the court of valid reasons for excluding evidence. What proper predicate is lacking? What prefatory material is missing?

See Ray, Law of Evidence, sec. 786, (1980): "If evidence of the party's declaration is offered to prove the facts declared by the party-declarant in his own favor, the evidence is hearsay and the admissions-exception is of course inapplicable. Unless the declaration comes within some other exception to the hearsay rule, the all-sufficient objection is the general hearsay principle.

"Rather unfortunately, however, the practice has arisen of objecting to the evidence as a 'self-serving declaration'. It is thought that there is no independent rule of exclusion for self-serving declarations apart

from the general hearsay rule. The use of the term tends, however, to suggest that there is such a rule and to the view that if the party's declaration were within some established exception that it would nevertheless be inadmissible because 'self-serving'. The law as gathered from the decisions of the courts which have passed on the question is to the contrary."

■ Though no hearsay objection was made by the State to these letters, we hold that even if it had been made, the letters were not hearsay evidence. They were not offered for the truth of their contents, but to show the state of appellant's mind at the time they were written. See Ray, Law of Evidence, sec. 801, (1980).

■ When the question of sanity is raised, the policy of the law is that everything relevant, which has anything to do with that question, and which can shed any light whatever on the question of sanity, is admissible. See *Miguez v. Miguez*, 221 S.W.2d 293, (Tex.Civ.App.—Beaumont 1949). The question there was whether the deceased had mental capacity to execute a deed to one son, and the court in holding that all manner of circumstances were admissible to help prove this question, said: "Virtually then, the mind is one, while the surroundings are multifold; and the mode of operation cannot be ascertained to be normal or abnormal except by watching the effects through a multifold series of causes. On the one hand, no single act can be of itself decisive, while, on the other hand, any act whatever may be significant to some extent. The first and fundamental rule, then, would be that any and all conduct of the person whose mental capacity is questioned is admissible in evidence. There is no restriction as to the mind of conduct. There can be none, for if a specific act does not indicate insanity it may indicate sanity. It will certainly throw light one way or the other upon the issue." In the foregoing sort of evidence, the hearsay rule forms no objection to admitting communications of third persons or of the person himself whose sanity is in question. Such utterances are not received as testimonial assertions

by him to prove the facts asserted, but as indicating circumstantially the operations of his mind. See also 2 Ray, Texas Practice, sec. 1532 (3d ed. 1980); *Alamo Development Company v. Priest*, 335 S.W.2d 240 (Tex.Civ.App.—Austin 1960, no writ); *Hefley v. State*, 480 S.W.2d 810 (Tex.Civ.App.—Fort Worth 1972, no writ); *Ex Parte Watson*, 606 S.W.2d 902 (Tex.Cr.App.1980).

We hold that these writings, exhibit nos. 3, 4 and 5, were admissible on the question of whether appellant was sane or insane at the time in question which was the only question to be decided by the jury. These letters, though admittedly self-serving and possibly faked by appellant, should have been examined by the jury, along with the evidence of the two psychiatrists and other evidence on the question. The jury should have decided whether they were genuine or not. With the issue of insanity hotly contested and two psychiatrists differing on it, it was error to exclude this evidence.

■ In his second ground of error appellant complains of what he calls improper jury argument by the State. The prosecutor told the jury: "Mr. Fick told you that nobody was going to tell you the result of your verdict, and that's wrong. I'm going to tell you the result of your verdict. If you say, 'not guilty,' the man hits the streets at the same time you do." Appellant says that this argument was prejudicial, a comment on matters outside the record, and a misstatement of the law under V.A.C.C.P. art. 46.03 sec. 4. Objection was made to this argument which was sustained by the trial court and the jury was instructed not to consider it for any purpose. Appellant's motion for mistrial was denied. If there was any error in the prosecutor's comments, it was cured by the sustaining of the objection and the court's instruction to the jury not to consider the argument. We do not find that it caused an improper or unfair trial and accordingly, appellant's second ground of error is overruled.

The judgment is reversed and the cause remanded.